**ANDREW FISHER CYCLE CO., Inc.**

v.

**UNITED STATES.**

No. 2460.

United States Customs Court,
Second Division.
May 27, 1964.

Brooks & Brooks, New York City (Thomas J. McKenna, New York City, of counsel), for plaintiff.

John W. Douglas, Asst. Atty. Gen. (Richard E. FitzGibbon and Samuel D. Spector, trial attys.), New York City, for defendant.

Lamb & Lerch, New York City (David A. Golden, New York City, of counsel), as amicus curiae.

Before LAWRENCE, RAO, and FORD, Judges.

LAWRENCE, Judge.

This cause of action tests the validity of a Presidential proclamation which raised the duty upon imported bicycles of two types (1) those with wheel diameters over 25 inches and weighing 36 pounds or more and (2) others having wheel diameters over 19 inches but not over 25 inches.

The jurisdiction of the court is invoked by protest, filed pursuant to the provisions of section 514 of the Tariff Act of 1930 (19 U.S.C. § 1514).

The collector of customs classified the merchandise in paragraph 371 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 371), as modified by Presidential Proclamation No. 3108, 90 Treas.Dec. 285, T.D. 53883, and assessed duty upon the bicycles of the larger diameter at $3.75 each and those of the smaller diameter were assessed with duty at 22½ per centum ad valorem.

The plaintiff contends that the decision of the collector is erroneous on the ground that it is based upon an invalid proclamation. More specifically, it is claimed that duty should have been assessed on the bicycles with wheel diameters in excess of 25 inches at the rate of $2.50 each, but not less than 15 per centum or more than 30 per centum ad valorem, and on the other type of bicycles, above mentioned, $2 each, but not less than 15 per centum nor more than 30 per centum ad valorem pursuant to the provisions of said paragraph 371, as modified by the General Agreement on Tariffs and Trade, 82 Treas.Dec. 305, T.D. 51802.

The Presidential proclamation in issue here was promulgated pursuant to the authority of section 7 of the Trade Agreements Extension Act of 1951 (19 U.S.C.A. § 1364), as amended, which will be considered in greater detail, infra.

The facts in the case are not in dispute and the issue before the court is purely a question of law.

The salient facts agreed to by adversary parties are set forth in a stipulation, which reads as follows:

"1. That on June 14, 1954, an application was filed with the Tariff Commission for an investigation of bicycles under section 7, Trade Agreements Extension Act of 1951, as amended.

"2. That on June 22, 1954, the Tariff Commission, by order of investigation No. 37, instituted an investigation under said section 7, with respect to bicycles. Due notice of such investigation was given.

"3. That on July 8, 1954, the Tariff Commission ordered a public hearing to be held in said investigation No. 37 on September 21, 1954. Due notice of such hearing was given.

"4. That on September 21–24, inclusive, 1954, and September 27, 1954, a public hearing was held by the Commission pursuant to said notice.

"5. That on March 14, 1955, the Tariff Commission submitted a report to the President on its said Investigation No. 37 on bicycles.

"6. That on May 11, 1955, the President addressed a letter to the Chairman of the Tariff Commission requesting further information and report back to him no later than July 15, 1955.

"7. That on May 11, 1955, the President addressed a letter to the Chairman of the Committee on Ways and Means, House of Representatives, and Committee on Finance, Senate, advising them he was remanding the case to the Commission for further information.

"8. That on July 14, 1955, the Tariff Commission submitted a Supplemental report to the President on its said Investigation No. 37 with respect to bicycles. No public notice was issued and no public hearing was held in connection with said report.

"9. That on August 18, 1955, the President issued a proclamation increasing the rates of duty on bicycles of the type here involved to the rates recommended by the Tariff Commission to the President.

"10. That said Proclamation of August 18, 1955 also increased the rate of duty on other bicycles of a type not herein involved to rates not recommended by the Tariff Commission.

"11. That such bicycles were the subject of the case reported as United States v. Schmidt Pritchard & Co. et al., 47 CCPA 152, C.A.D. 750 in which the Court held that said Proclamation of August 18, 1955, insofar as said Proclamation (Presidential Proclamation No. 3108) sets a rate of duty on the class of bicycles there in issue other than that recommended by the Tariff Commission, it exceeds the authority delegated to the President and such portion of the proclamation is void.

"12. That on August 19, 1955, the Tariff Commission issued a statement reporting the action of the President, and the reasons stated by him for his action.

"13. That Collective Exhibit 2, Exhibits 3, 4, and 5 of United States v. Schmidt Pritchard & Co. et al., 47 CCPA 152, C.A.D. 750, may be accepted as evidence by the Court without objection from either party litigant.

"14. That the instant case is submitted on the basis of this stipulation of fact, * * *."

The pertinent provisions of section 7 of the Trade Agreements Extension Act of 1951, as amended, supra, read as follows:

"[Investigation by Commission]

"Sec. 7. (a) Upon the request of the President, upon resolution of either House of Congress, upon resolution of either the Committee on Finance of the Senate or the Committee on Ways and Means of the House of Representatives, upon its own motion, or upon application of any interested party, the United States Tariff Commission shall promptly make an investigation and make a report thereon not later than nine months after the application is made to determine whether any product upon which a concession has been granted under a trade agreement is, as a result, in whole or in part, of the duty or other customs treatment reflecting such concession, being imported into the United States in such increased

quantities, either actual or relative, as to cause or threaten serious injury to the domestic industry producing like or directly competitive products.

"[Tariff Commission hearings]

"In the course of any such investigation, whenever it finds evidence of serious injury or threat of serious injury or whenever so directed by resolution of either the Committee on Finance of the Senate or the Committee on Ways and Means of the House of Representatives, the Tariff Commission shall hold hearings giving reasonable public notice thereof and shall afford reasonable opportunity for interested parties to be present, to produce evidence, and to be heard at such hearings.

"[Recommendation to President]

"Should the Tariff Commission find, as the result of its investigation and hearings, that a product on which a concession has been granted is, as a result, in whole or in part, of the duty or other customs treatment reflecting such concession, being imported in such increased quantities, either actual or relative, as to cause or threaten serious injury to the domestic industry producing like or directly competitive products, it shall recommend to the President the withdrawal or modification of the concession, its suspension in whole or in part, or the establishment of import quotas, to the extent and for the time necessary to prevent or remedy such injury. The Tariff Commission shall immediately make public its findings and recommendations to the President, including any dissenting or separate findings and recommendations, and shall cause a summary thereof to be published in the Federal Register.

"[Factors for consideration]

"(b) In arriving at a determination in the foregoing procedure the Tariff Commission, without excluding other factors, shall take into consideration a downward trend of production, employment, prices, profits, or wages in the domestic industry concerned, or a decline in sales, an increase in imports, either actual or relative to domestic production, a higher or growing inventory, or a decline in the proportion of the domestic market supplied by domestic producers. Increased imports, either actual or relative, shall be considered as the cause or threat of serious injury to the domestic industry producing like or directly competitive products when the Commission finds that such increased imports have contributed substantially towards causing or threatening serious injury to such industry.

"[Modifications by President]

"(c) Upon receipt of the Tariff Commission's report of its investigation and hearings, the President may make such adjustments in the rates of duty, impose such quotas, or make such other modifications as are found and reported by the Commission to be necessary to prevent or remedy serious injury to the respective domestic industry. If the President does not take such action within sixty days he shall immediately submit a report to the Committee on Ways and Means of the House and to the Committee on Finance of the Senate stating why he has not made such adjustments or modifications, or imposed such quotas.

"[Publication of Commission's report]

"(d) When in the judgment of the Tariff Commission no sufficient reason exists for a recommendation to the President that a concession should be withdrawn or modified or a quota established, it shall make and publish a report stating its findings and conclusions.

"* * *"

The question for determination by the court is whether said proclamation 3108,

increasing the rates of duty upon certain imported bicycles, was a valid exercise by the President of the power invested in him by Congress by said Trade Agreements Extension Act of 1951, as amended.

It is urged by plaintiff that said act contains a conditional grant of power to the President by Congress pursuant to which the President must accept or reject the recommendations of the Tariff Commission within a period of 60 days from the receipt by the President of the Commission's report (in the instant case, from March 14, 1955) ; that inasmuch as the proclamation was not promulgated until August 18, 1955, the President had failed to properly function within the statutory period of 60 days, with the result that the proclamation was a nullity and, hence, the rates of duty claimed by plaintiff are still in effect.

█ It is well established by eminent judicial authority that Congress may endow the President with power to raise or lower rates of duty provided he acts within the concept of a pattern of procedure formulated by the Congress. J. W. Hampton, Jr., & Company v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L. Ed. 624. That case tested the validity of section 315(a), title III, of the Tariff Act of September 21, 1922, which empowered and directed the President to increase or decrease duties imposed by the act so as to equalize the differences which, upon investigation, he found and ascertained to exist between the costs of producing certain articles in the United States and in competing foreign countries.

It is agreed by the parties litigant that the statutory procedure was complied with by the Tariff Commission up to the point where it had completed its investigation and report to the President on March 14, 1955.

Subsequent events were as follows: Section 7(c) of the Trade Agreements Extension Act, supra, provides that upon receipt of the Tariff Commission's report—

" * * * the President may make *such* adjustments *in the rates of duty,* impose such quotas, or make such other modifications as are *found and reported by the Commission* to be necessary to prevent or remedy serious injury to the respective domestic industry. * * *" [Italics added.]

Said section 7(c) further provides that—

" * * * If the President does not take such action *within sixty days* he shall immediately submit a report to the Committee on Ways and Means of the House and to the Committee on Finance of the Senate stating why he has not made *such* adjustments or modifications, or imposed such quotas." [Italics added.]

On May 11, 1955, which was within the 60-day period, the President addressed the appropriate House and Senate Committees advising them that he was remanding the case to the Commission for further information.

On July 14, 1955, which was 4 months subsequent to the date of its original report to the President, the Commission issued a supplemental report upon the matter in controversy and, on August 18, 1955, the President issued a proclamation increasing the rates of duty on the subject bicycles to the rates recommended by the Tariff Commission.

It is significant here to remark that proclamation 3108, supra, is the same proclamation which was involved in United States v. Schmidt Pritchard & Co., Mangano Cycles Co., 47 CCPA 152, C.A.D. 750, certiorari denied, 364 U.S. 919, 81 S.Ct. 283, 5 L.Ed.2d 259, which will be discussed later in this opinion. The only material difference between that case and the one at bar is that, here, the President, in his proclamation, accepted the rates recommended by the Tariff Commission, whereas, in the Schmidt case, he proclaimed higher rates than those recommended by the Commission.

The court has been favored with well-prepared briefs filed by the adversary parties as well as by *amicus.*

The Government and *amicus* rely upon the Schmidt case, supra, as dispositive of the controversy presented here.

However, plaintiff, on the other hand, claims that the court erred in reversing the lower court on that phase of the case involving the statutory time limit in which the President should act on the recommendation of the Tariff Commission.

It becomes important, therefore, to examine the Schmidt case in order to determine its impact upon the facts of this case. In so doing, we shall briefly trace its earlier history in this court. Schmidt Pritchard & Co. and Mangano Cycles Co. v. United States, 41 Cust.Ct. 108, C.D. 2029. A majority of the court there held that the President erred in not accepting or rejecting the recommendation of the Tariff Commission to make adjustments in rates of duty on the types of bicycles involved in that case but, instead, in proclaiming rates higher and different from those recommended by the Tariff Commission, thereby exceeding his statutory power.

If that were not sufficient reason for holding that the proclamation was invalid to the extent indicated above, this court was unanimous in the opinion that the proclamation was invalid on the further ground that the President had not issued his proclamation within the time limit prescribed by the statute.

The appellate court, in review, agreed with the opinion of the lower court that the President must accept or reject the recommendations of the Tariff Commission, but a majority of that court disagreed with the finding of the lower court that the failure of the President to act within the time limits prescribed by the statute likewise invalidated the proclamation.

On this phase of the case, the appellate court stated:

"The procedural questions turning on the time limits provided in section 7(a), while not free from doubt and ambiguity as regards the request of the President to the Tariff Commis-

sion for supplemental information and the subsequent supplemental report of the Tariff Commission, which had the practical effect here of enlarging the times provided in section 7(a), should, we think, be resolved in favor of appellant's contentions. The President's report of May 11, 1955, was submitted within the sixty-day period specified in sections 7(a) and 7(c) to the Chairmen of the specified committees of both the Senate and the House, and the report of the Tariff Commission had been submitted to the President within the nine months time period specified in section 7(a).

"Thus, Congress was fully and timely notified as to the steps being taken and could, had it desired so to do, have taken independent action as envisaged at the time of the enactment of section 7 of the Trade Agreements Extension Act of 1951."

After considering the history of H.R. 1, the bill which subsequently became the Trade Agreements Extension Act of 1955, and reviewing its course in the House of Representatives, our appellate court concluded that—

" \* \* \* the procedural aspects leading up to the promulgation of Presidential Proclamation No. 3108 were conducted in compliance with section 7 of the Trade Agreements Extension Act of 1951, as amended, as that section was interpreted and administered by the President and the Tariff Commission with the knowledge of Congress and with what we find amounted to Congressional assent to this procedure."

The plaintiff, in its brief, contends that the language of the section is free from ambiguity and that the court was not at liberty to resort to legislative history to resolve what it deemed to be doubtful language. Furthermore, that the words of the statute "not later than nine months after the application is made" in section 7(a) and "within sixty days" in section 7(c) of the extension act admit of no uncertainty as to their meaning.

That argument begs the question. Of course, any judge or court· has the right and is at liberty to resort to any appropriate rules of construction as an aid to ascertaining the intent of Congress which its judicial conscience may dictate.

Consequently, it is not for us to say, as implied in the brief of plaintiff, that the appellate court erred in finding that the statute was not free from doubt or ambiguity, or in resorting to the congressional history of the act in order to determine its meaning.

Upon the undisputed facts of record and following the reasoning of the appellate court in Schmidt Pritchard, we find and hold, with respect to the merchandise in controversy, that, in promulgating proclamation 3108, the President properly exercised the powers expressly conferred upon him by section 7—the so-called escape clause—of the Trade Agreements Extension Act, and that the collector of customs correctly classified the subject merchandise for duty.

For the reasons stated, the protest is overruled on all grounds, and judgment will issue accordingly.